# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| LIMO COMPANY,<br><br>            Plaintiffs,<br>vs.<br><br>CHEMICAL MILLING INTERNATIONAL CORPORATION; AND DOES 1-20,<br><br>            Defendants. | CASE NO. 2:17-cv-02345-SVW-RAO<br><br>**ORDER AND JUDGMENT GRANTING PLAINTIFFS' MOTION FOR DEFAULT [21]**<br><br>JS-6 |

**I. INTRODUCTION**

On March 27, 2017, plaintiff Limo Company ("Plaintiff" or "LIMO"), filed this action against Defendant Chemical Milling International Corporation ("Defendant" or "CMIC") for contaminating the Plaintiffs property and costs attributed to investigating, removing, cleaning up, and remediating the Hazardous Substance located on and around the Plaintiffs real property. Presently before the Court is Plaintiffs' Motion for Default Judgment. Dkt. 21. For the reasons stated below, the Court GRANTS the motion.

## II. FACTS AND PROCEDURAL HISTORY

This is an action to collect on unpaid invoices and service charges pursuant to a written contract. Plaintiff, LIMO, owner of the real property known as 1320-1330 East Franklin Avenue, El Segundo, California ("Subject Property") filed the Complaint on March 27, 2017, alleging that Defendant, CMIC, a former tenant of the 1330 East Franklin portion of Plaintiff s Subject Property, committed CERCLA violations, 42 U.S.C. § 9601 et seq., in its operation of a chemical etching business on the Subject Property from approximately 1959 to 1992. See Complaint, Doc. 1, ¶¶ 1-7. LIMO alleges that CMIC operated its business, with use of chemical milling tanks, a 1,000- gallon tank used for chlorinated and halogenated solvent blending, and spray booths, on the Subject Property in a manner which caused the spilling, leaking, disposal, release, and threatened release of substances in the Subject Property's soil, soil gas, and groundwater, including tetrachloroethene, trichloroethene, and hexavalent chromium, all "Hazardous Substances," as defined per CERCLA, attributable to CMIC's site operations. Id., ¶¶ 8-10.

LIMO further alleges that such release and threatened release of these substances caused a condition of "Hazardous Substances" contamination at the Subject Property, all of which were identified in environmental testing performed on the Subject Property in February to May 2015. *Id*. As the "Hazardous Substances" contamination at the Subject Property represent a health hazard to building occupants, on June 28, 2016, LIMO implemented an interim remedy consisting of a soil vapor extraction system, and on July 2,2016, entered into a voluntary oversight agreement with the Department of Toxic Substances and Control, to obtain its oversight over what will be an extensive and costly "Hazardous Substances" cleanup, ultimately culminating in a "no further action" determination, and in compliance with the National Contingency Plan. Id., ¶11. Furthermore, in the interim, the health risks posed by exposure to

2

soil vapors emanating from the "Hazardous Substances" used and released by CMIC's operation of the Subject Property, precludes LIMO from renting the 1330 East Franklin portion of the Subject Property. *Id*. In order to comply with the extensive cleanup of the contamination, LIMO has expended, continues to expend, and will be expending extensive costs attributable to investigating, removing, cleaning up, and remediating the Hazardous Substances located on and around the Subject Properly. Id., ¶¶ 17, 18.

**ANALYSIS**

    a. **Default Judgment**

Before a Court may rule on a Motion for Default Judgment, it first must determine whether the Motion complies with Rule 55 of the Federal Rules of Civil Procedure and Local Rule 55-1. *See Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). The Motion must set forth: (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Solders' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required. *Id.*; *see also Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 n.19 (C.D. Cal. 2010) (holding that service on defaulting party is required only if the party has appeared in the action).

Once these procedural requirements are met, "[g]ranting or denying a motion for default judgment is a matter within the court's discretion." *Landstar*, 725 F. Supp. 2d at 919. Entry of default does not automatically entitle the non-defaulting party to a court-ordered judgment. *See Pepsico*, 238 F. Supp. 2d at 1174. In fact, default judgments are ordinarily disfavored. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Accordingly, the Ninth Circuit has instructed courts to consider the following factors in deciding whether to grant default judgment: (1) the

possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action;(5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel*, 782 F.2d at 1471-72.

Upon entry of default, the well-pleaded allegations of the complaint, except those concerning damages, are deemed true.  Fed. R. Civ. P. 8(b)(6).  The court, however, must assure itself that "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Landstar*, 725 F. Supp. 2d at 920.  Further, the plaintiff must provide evidence of its damages, and the damages sought must not be different in kind or exceed the amount demanded in the pleadings.  Fed. R. Civ. Pro. 54(c) ("A judgment by default shall not be different in kind from, or exceed in amount, what is demanded in the pleadings.").

### b. **Procedural Requirements**

Plaintiffs have satisfied the procedural requirements for default judgment under Local Rule 55-1.  Plaintiffs provided the Declaration of Thierry R. Montoya, the attorney representing the Plaintiffs. Mr. Montoya avers that (1) Plaintiffs' Request of Default on the Complaint was entered against Defendant on July 31, 2017; (2) Defendant is a business entity and, therefore, not a minor, incompetent person, soldier in military service, or otherwise exempted under the Soldier's and Sailor's Civil Relief Act of 1940; and (3) that Notice of the Application for Default judgment was served upon Defendant. As the procedural requirements are met, the Court turns to examine the merits of the Request.

### c. **Application of the *Eitel* Factors**

#### i. **Possibility of Prejudice to the Plaintiff**

4

Plaintiffs would suffer prejudice if default judgment is not entered because Plaintiffs would be without other recourse. If a default judgment is not entered, Plaintiffs will continue to suffer harm from Defendant's continued lack of payment. Therefore, this factor weighs in favor of granting default judgment.

> ii. **Merits of Plaintiffs' Claim and Sufficiency of the Complaint**

Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18. The second and third *Eitel* factors assess the substantive merit of plaintiff's claim and the sufficiency of its pleadings. These factors "require that a plaintiff state a claim on which [it] may recover." *Pepsico*, 238 F.Supp.2d at 1175; *Landstar Ranger, Inc.*, 725 F. Supp. 2d 916 at 920.

Defendant does not dispute the Plaintiffs' assertions of (1) Cost Recovery, under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCL A"); (2) Contribution under CERCLA; (3) Contribution and/or Indemnity under Health & Safety Code § 25363(e); (a) Declaratory Relief; (5) Negligence; (6) Private Nuisance; (7) Waste; (8) Trespass; (9) Common Law Contribution; and (10) Equitable Indemnity.

**A. First and Second Cause of Action - CERCLA**

The First and Second Causes of Action of Plaintiff s Complaint allege that Defendant is entitled to the cost of recovery under section 107 (a), and contribution from Defendant pursuant to section 113(f) of CERCLA, 42 U.S.C.A. 9607(a).CERCLA actions require a party show that: (1) the site in question is a "facility" under CERCLA's definition of that term; (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred; (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan;" and (4) the defendant is within one of four classes of responsible persons subject to the liability provisions of CERCLA. Carson

5

*Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863 (9th Cir. 2001). Here, the site located on the Subject Property in question constitutes a "facility" within the meaning of CERCLA and CMIC was the operator of a chemical etching facility.

A CERCLA "release" includes "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment..." 42 IJ.S.C. §9601(22). Here, the Defendant operated its business on that portion of the Subject Property, and further operated its business onsite, storing, treating, releasing, and disposing of Hazardous Substances at the site, which caused the spilling, leaking, disposal, release, and threatened release of Hazardous Substance thereby creating a condition of Hazardous Substances contamination at the site. See Complaint, Doc. 1, ¶¶ 10,14.

In response to the spill, the Plaintiff in the present case has incurred costs that were "necessary" and "consistent with the national contingency plan" by conducting environmental testing in 2015 and in the interest of an expeditious cleanup and acting in good faith, LIMO has undertaken action to address removal, remediation and migration of Hazardous Substances, the actions and costs taken by LIMO are consistent with the National Contingency Plan, and overseen by the DTSC. Id.

Once these elements have been established, section 107(a) of CEQA imposes strict liability on the defendant without regard to fault, and costs and interests on those costs to the party who undertook such costs in response to the release or threatened release of Hazardous Substances. 3550 *Stevens Creek Assocs. v. Barclays Bank of Cal.*, 9I5 F.2d 1355, 1357 (9th Cir. 1990); 42 U.S.C. § 9607(a). In addition to an action for cost recovery, "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) ...;' 42 U.S.C. § 9613(f)(1). "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." *Id*.

6

**B. Third Cause of Action - California Health & Safety Code**

The California Hazardous Substances Account Act ("HSAA") specifically authorizes a lawsuit for contribution after payment of costs for removal or remedial actions under HSAA or CERCLA. *FMC Corp. v. Vendo*, 196 F'Supp.2d 1023,1039-1040 (E.D. CaL2002); Health and Safety Code §25363(e).

The extent of liability for disposal of hazardous substances under the HSAA is identical to that of CERCL A. *See, e,g., Vixon-Egti Equipment Co. v. John A. Alexander Co*.,949 F. Supp. 1435, 1441 n.5 (N.D. Cal. 1996) ("[T]he HSAA is interpreted consistent with CERCLA."). In fact, a party's liability under HSAA is contingent upon the party's liability under CERCLA. *See Hínds Investments, LP v. Team Enterpríses, Inc.*, 2010 WL 922416, at *4 (E.D. Cal.2010); *Santa Clara Valley Water Dist. v. Olin Corp.*, 655 F. Supp. 2d 1048, 1064 (1N.D. Cal. 2009) ("The parties both agree that [Defendant's] liability under Section 25363(e) of the Health and Safety Code is directly contingent on its liability under CERCLA."); *Castaic Lake Water Agency v. Whittaker*, 272 F. Srpp. 2d 1053,1084 n.40 ("HSAA creates a scheme that is identical to CERCLA with respect to who is liable.") (internal citation omitted). Furlhennore, with respect to the HSAA, "the state law follows the federal." *FMC Corp. v. Vendo Co*.,196 F. Supp. 2d 1023,1040 (8.D. CaL.2002); see also *T.H. Agriculture & Nutrition Co., Inc. v. Aceto Chemical Co.*, Inc., 884 F. Supp. 357,363 (8.D. Cal. 1995) ("liability under CHSAA requires a finding of liability under CERCLA.").

Based on the analysis above concerning CMIC's liability under CERCLA, CMIC is a "liable person" as defined by *Health and Safety Code* § 25363 (e), and as LIMO has incurred removal or remedial costs as a result of the environmental contamination, LIMO is entitled to seek contribution or indemnity from CMIC. See Complaint, Doc. 1, ¶¶ 24-27; Health & Safety Code § 25263(e).

7

**C. Fourth Cause of Action - Declaratory Relief**

In addition to awarding a default judgment for contribution and recovery of response costs incurred, 42 U.S.C. § 9607(a); Health and Safety Code § 25363(e) allows parties to seek future response cost; *Stanton Road Associates v. Lohrey Enterpríses*, 984 F.2d 1015, 1021 (9th Cir. 1993); *In re Dant & Russell, Lnc.*, 951 F.2d 246, 250 (9th Cir. 1991) (court may enter a declaratory decree apportioning liability for costs when and if incurred). As such, the court WILL enter default judgement holding CMIC liable for their equitable share of past and future response costs related to the Subject Property.

**D. Fifth Cause of Action - Negligence**

To establish a California negligence claim a party must show: (1) the defendant owed the plaintiff a duty of due care; (2) the defendant breached that duty; and (3) the breach was a proximate or legal cause of injuries suffered by plaintiff. *See Ann M. v. Pacffic Plaza Shopping Center*, 6 Cal. 4th 666, 673 (1993). A plaintiff is afforded a rebuttable presumption of negligence - that is, negligence per se - if the defendant: (1) violated a statute; (2) the violation proximately caused injury to property; (3) the injury resulted from an occurrence of the nature which the statute was designed to prevent; and (4) the party suffering the injury to its property was one of the class of persons for whose protection the statute was adopted. See Cal. Evid. Code § 669; Newhall, 19 Cal. App. 4that 347.

Here, CMIC was a tenant of the Subject Property and was under a duty to preserve and protect the Subject Property. See Complaint, Doc. 1, ¶ 45. However, during its tenancy on the Subject Property, CMIC conducted itself to violate federal and state statutes, CERCLA and HSAA as detailed above, such that during the operation of its business at the site, sudden and

8

accidental releases of Hazardous Substances occurred, thereby contaminating the site. See Complaint, Doc. 1, ¶32.

As a proximate result of CMIC's negligence, Defendant breached its duties to maintain the Subject Property, breaching its duty and committing statutory violations which have injured and continue to injure Plaintiff, LIMO. *Id*., ¶¶ 32-33. LIMO has suffered damages including but not limited to response costs incurred and to be incurred in the future to properly respond to the alleged Hazardous Substances contamination in and around the Subject Property, and related costs. *Id*. Furthermore, had CMIC adhered to its duties, the Subject Properly would not have contamination, and Plaintiff could proceed unimpeded with it occupation and lease of the site.

**F. Sixth Cause of Action - Private Nuisance**

Nuisance is anything "which is injurious to health ... or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." CaL Civ. Code § 3479. The elements for nuisance are (1) Plaintiff own the Subject Properly; (2) Defendant created a condition that is an obstruction to the free use of the Subject Properly, so as to interfere with the comfortable enjoyment of that Subject Property; (3) the condition has interfered with Plaintiff s use or enjoyment of the Subject Property; (4) Plaintiff did not consent to Defendant's conduct; (5) an ordinary person would be reasonably annoyed or disturbed by Defendant's conduct; (6) Plaintiff was harmed; (7) Defendant's conduct was a substantial factor in causing Plaintiffs harm; and (8) the seriousness of the harm outweighs the public benefit of Defendant's conduct. *Yamagiwa v. Cíty of Half Moon Bay*, 523 F.Supp.2d 1036, 1 101 (N.D. Cal.2007).

Environmental contamination, in the form of groundwater and soil contamination constitutes a nuisance. *Newhall Land & Farming v. Co. Superior Court*, 19 Cal. App. 4th 334,341 (1993). Both the parties who maintain the nuisance and the parties who create the

9

nuisance are responsible for the ensuing damage, regardless of whether those parties currently have a possessory interest in the property. *Id.; see also California v. Campbell*, 138 F.3d 772,782 (9th Cir. 1998) (holding that contaminated water under plaintiffs property created nuisance and endangered properly).

The evidence recited herein establishes that CMIC is responsible for private nuisance because: (1) CMIC caused and or permitted the contamination alleged in this action by its negligence and/or omissions in operating its business failed to take reasonable measures to prevent releases of Hazardous Substances; (3) Plaintiff never consented to the existence of nuisance created by Defendants; (4) an ordinary person, using an objective would be reasonably annoyed or distributed by Defendant's conduct.; (5) Defendant has released hazardous waste onto and under Plaintiff s Subject Properly, thereby causing huge monetary expenses.

**G. Seventh Cause of Action – Waste**

To state a cause of action for waste, a plaintiff must plead and prove that the defendant was under a duty to preserve and protect the subject properly. *Old Republic Ins. Co. v. Superior Court*, 66 Cal. App. 4th 128 (1998) at 149. As a tenant CMIC had a duty to preserve and protect the Subject Property.

To constitute waste, there must be an injury to the inheritance, substantially depreciating the market value of the property. CMIC leased the site at the Subject Property and its operation of its chemical milling business located on the Subject Property resulted in Hazardous Substances came into contact with the soil and soil gas, resulting in contamination of the soil, of the subject property. Id., ¶ 43. As a result, CMIC has committed waste on the Subject Property, rendering it unfit for use or occupancy, and resulting in a diminution in the use and marketability, as well as a diminution in the value of the Subject Property. Id., ¶ 44.

**Eight Cause of Action – Trespass**

Trespass is a wrongful interference with a plaintiffs possession of property. *MacLeodv. Fox West Coast T. Corp.*, 10 Cal. 2d 383,387 (1937). The elements of a trespass claim are: (1) Plaintiff is the current owner of the Subject Property; (2) Defendants intentionally, recklessly or negligently caused Hazardous Substances and wastes to enter Plaintiffs Subject Property; (3) Plaintiff did not give permission for the entry; (4) Plaintiff was harmed; and (5) Defendant's conduct was a substantial factor in causing Plaintiffs' harm. *Yamagiwa v. City of Half Moon Bay*, 523 F.Supp.2d 1036 (N.D. Cal.2007), l01-02.

All of the corresponding elements of this cause of action have been discussed and established above. With respect to element (2), CMIC's disposal and release of Hazardous Substances surrounding its operation of a chemical etching facility caused the contaminants to enter Plaintiff s Subject Property. Here, CMIC's physical contamination of Plaintiffs Subject Properly constitutes a trespass. *Kornoffv. Kingsburg Cotton Oil Co.*, 45 CaI.2d265 (1955) (fumes and waste deposited on plaintiffs property by adjacent milling facility constituted trespass); *Roberts v. Permanente Corp.*, 188 Cal. App. 2d526,530 (1961) (causing entry of foreign matter on another's land is trespass). Further, the present existence of contaminants in the soil, soil gas, and groundwater constitutes a continuing trespass. See Complaint, Doc. 1, ¶ 50.

**Ninth and Tenth Causes of Action - Equitable Indemnity, Common Law Contribution**

As LIMO has been obligated to pay sums representing a percentage of liability not LIMO's own including costs in investigating, assessing, monitoring, treating, removing and/or

11

remediating the contamination in or around the Subject Property, due to the contamination resulting from the acts and/or omissions of CMIC.

Therefore, LIMO is entitled to indemnification and/or contribution from CMIC for said losses, damages, and costs incurred as a result of investigating, assessing, monitoring, treating, removing and/or remediating the contamination in or around the Subject Property.

**Sum of Money at Stake**

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *Pepsico*, 238 F.Supp.2d at 1176; *Landstar Ranger, Inc.*, 725 F. Supp. 2d 916 at 921. This requires that the Court assess whether the recovery sought is proportional to the harm caused by the defendant's conduct. See *Walters v. Statewide Concrete Barrier, Inc.*, No. C 04–2559 JSW, 2006 WL 2527776, *4 (N.D.Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted"); *Landstar Ranger, Inc.*, 725 F. Supp. 2d 916 at 921.

The total amount of damages incurred total $391,719.74. Because there appears to be merit to the Plaintiffs' claims, this factor weighs in favor of granting default judgment.

    iii. **Possible Dispute of Material Facts**

The fifth *Eitel* factor considers the possibility that material facts may be in dispute. *Pepsico*, 238 F.Supp.2d at 1177; *Landstar Ranger, Inc.*, 725 F. Supp. 2d 916 at 921. Defendant has failed to appear in the action or to contest the material facts alleged in Plaintiffs' complaint. Accordingly, this factor weighs in favor of entering default judgment.

    iv. **Whether Default was Due to Excusable Neglect**

As to factor six, there is no evidence that Defendants' failure to appear is the result of excusable neglect. Defendants were properly served with the Complaint. To date, Defendants

have not filed anything that could be construed as an attempt to set aside the entry of default for this claim. Therefore, this factor weighs in favor of entering default judgment.

### v. **Policy Favoring Decisions on the Merits**

Finally, as to factor seven, although cases should be decided on the merits whenever possible, "this preference, standing alone, is not dispositive." *Pepsico*, 238 F.Supp.2d at 1177 (*quoting Kloepping v. Fireman's Fun*d, 1996 WL 75314 at *3 (N.D.Cal.1996)). Rule 55(a) allows a court to decide a case before the merits are heard if a defendant fails to appear and defend. Therefore, this factor does not preclude the entry of default judgment.

Accordingly, the *Eitel* factors in this case weigh in favor of granting default judgment.

## III. **REMEDY**

Here, the Court finds ample evidence that Plaintiff sustained monetary damages in the amount of $391,719.74.

Plaintiff requests that judgment be entered in that amount plus $51,272.60 in attorneys' fees and costs. Local Rule 55-3 provides for reasonable attorneys' fees and costs when there is a promissory note, contract or applicable statute. In the Motion for Default Judgment, LIMO requests for costs, pursuant to California's "private attorney general" statute, Code of Civil Procedure section 102L5. Civ. Proc. Code § 1021.5 provides that:

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in an action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general

public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any .

Cal. Civ. Proc. Code § 1021.5.

The Court does not believe that an award of attorney's fees in this amount is warranted in this case. This case was not fully litigated, and attorney's fees and costs in excess of $50,000 would be disproportional. Accordingly, the Court awards attorney's fees according to the Local Rule 55-3 schedule. The schedule provides that for a default judgment award in excess of $100,000.00, the attorneys' fees awards are $5,600.00 plus 2% of the amount over $100,000.00. In the present case, LIMO seeks to recover $391,719.74 based on necessary response and remediation costs related to the Hazardous Substances contamination clean up at the Subject Property. The Court awards attorneys' fees in the amount of $11,434.39.

IV. **CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment and AWARDS damages in the amount of $391,719.74 and attorneys' fees in the amount of $11,434.39.

IT IS SO ORDERED

Date: September 28, 2017

_____
HON. STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE